MATILDA BALDWIN, Appellant, v. CLAUS OPSVIG, H. P. Hammer, A. Walker and George W. Chamberlin, as Executor of the Estate of J. A. Chamberlin, Deceased, Respondents.

(219 N. W. 112.)

**Specific performance — payments by certain date — option exercised by purchaser — may show by parol agreement release from liability.**

1. In an action for the specific performance of a land contract dated September 1, 1919, and providing for the payment of $2,000 down and $7,000 on the first of January, 1925, with interest on deferred payments at 6 per cent, that on the payment of the $7,000 January 1, 1925, deed should issue to the vendee with a mortgage back to the vendor for balance of the purchase price, and which contract contains the further provision that the second party may sell the said land providing a payment of $3,000 is made on January 1st following such sale, such latter provision is an option for the benefit of the vendees which they may, or may not, take advantage of, and if said option is exercised the vendees may show by parol evidence that they were to be released from all liability, and the provision for such release was inadvertently omitted from the contract. Such oral testimony does not change or vary the terms of the writing.

**Specific performance — when plaintiff is entitled to judgment against assignees for amount due on contract less amount due on prior mortgages.**

2. In an action for a specific performance of a land contract, the assignees who purchased the contract assuming all liabilities thereunder including the payment of all prior mortgages, which prior mortgages were to be deducted from the sale price of the land, and where the assignees admit in their answer that there is a certain amount due on the land contract which is unknown to them, and prays to have the plaintiff produce the evidence of the amount due on said land contract, the plaintiff is entitled to a judgment against the assignees for the amount due on their contract less the amount due on prior mortgages.

Opinion filed March 21, 1928. Rehearing denied April 21, 1928.

Evidence, 22 C. J. § 1678 p. 1259 n. 88. Specific Performance, 36 Cyc. p. 789 n. 41; Vendor and Purchaser, 39 Cyc. p. 1233 n. 2.

Appeal from the District Court of Steele County, *Cooley,* J.

*Sad & Duffy,* for appellant.

"An allegation in the complaint that a grantor in a deed was in possession of the land conveyed when the deed was executed and delivered and thereafter is sufficient as an allegation of the ownership of the land by the grantor when the deed was delivered." Hanson v. Svarerud, 18 N. D. 550, 120 N. W. 550.

The mode of amending pleadings recognized by the practice of this state is by rewriting the pleading, leaving out such allegations and inserting such other allegations as may be desired, so that all parts of the pleadings shall be in one instrument complete in itself, following Caledonia v. Noonan, 3 Dak. 189, 14 N. W. 55.

"The mere granting of leave to amend a pleading does not amend it. Unless the leave is acted upon and the pleading redrawn, including the desired change, the amendment is deemed abandoned." Sutherland v. Beal, 12 N. D. 122, 95 N. W. 518; Clark v. Ellingson, 35 N. D. 546, 161 N. W. 199.

"A new and distinct cause of action cannot, at the time of trial, without consent, be thrust into a complaint by amendment." Cooke v. Northern P. R. Co. 22 N. D. 266; Mares v. Wormington, 8 N. D. 335; Woodward v. Northern P. R. Co. 16 N. D. 39.

"An amended answer is operative only from the time same is served and filed." MacLaren v. Kramer, 26 N. D. 261.

"There can be no equitable estoppel short of one arising from actual contract, where the truth is known to both parties or where they both have equal means of knowledge." 16 Cyc. 741; Loff v. Gilbert, 39 N. D. 188, 166 N. W. 810.

*Sinkler & Brekke* and *O. J. Thompson,* for respondents.

"A marketable title is a title free from litigation, palpable defects, and grave doubts and consisting both of legal title and equitable title fairly deducible from the record." Turner v. McDonald, 18 Pac. 262; Croskey v. Ladd, 28 Pac. 216; Sheehey v. Miles, 28 Pac. 1046.

"Where a thing to the contrary appears, the good title to which the purchaser has a right must be made out by the vendor himself or by his legal representatives acting as such." McVeety v. Harvey Mercantile Co. 24 N. D. 245, 139 N. W. 586.

"A vendee has the right to insist on a perfect title of record in the vendor at the time of the delivery of the deed." George v. Conhaim, 37 N. W. 791.

"The plaintiff must, in all actions for the specific performance of contracts, allege and prove that he has at all times been ready, able, and willing to perform the covenants of the contract on his part." Findley v. Koch, 101 N. W. 766.

"Before a party to a contract can maintain an action for a breach thereof he must establish his ability to perform or his full performance or tender of performance, and that the other party is in default." Legvold v. Olson, 189 N. W. 737.

"The plaintiff's laches may consist of his failure to promptly institute and prosecute proceedings in reference to such contract." Townsend v. Vanderwerker, 160 U. S. 171; Hatch v. Kizer, 33 Am. St. Rep. 258; Hogan v. Kyle, 35 Pac. 399.

"Time may be made of the essence of the contract and a specific performance will not be decreed where a default had occurred if the parties have expressly provided that time should be of the essence of the contract." Taylor v. Longworth, 10 L. ed. 405; Eiche v. Ronke, 43 L.R.A. (N.S.) 44.

If the evidence is conflicting and contradictory, only the court, in whose presence it is given, can clearly estimate its value. Chadbourne v. Davis, 13 Pac. 721.

BURKE, J. This is an action for the specific performance of a land contract for the sale of land.

The plaintiff purchased the land on September 18, 1918, from the State Bank of Cooperstown on contract for the total sum of $19,000, $2,000 to be paid upon the delivery of the contract, $3,000 April 1, 1919, and upon the last named payment the State Bank of Cooperstown was to give a warranty deed and take a mortgage back for $14,000 with interest at 6 per cent.

On the first of September, 1919, the plaintiff entered into a contract with the defendants Opsvig and Hammer, by the terms of which, the plaintiff agreed to sell and convey to Opsvig and Hammer, or their as-signees by deed of warranty the said land, viz., the $N\frac{1}{2}$ and the $SW\frac{1}{4}$ of sec. 31, twp. 146, Rg. 57 in Steele county, North Dakota for the sum of $23,846.00; $2,000 cash; $7,000 on or before January 1, 1925, and when $9,000 was paid the deed was to be given and a mortgage taken back for the balance. This contract is drawn on the usual blank form contract for a deed, and has this provision, written in typewriting, viz.: "It is agreed between the parties hereto that the party of the second part may sell within described land at any time providing a payment of $3,000 is made on or before January 1, following such sale leaving the payment due on or before January 1, 1925, $4,000."

It is claimed by the defendants, Hammer and Opsvig, that this pro-vision is not the whole of the agreement, that it was understood at the time and agreed that upon such payment, that is, the $3,000 payment, and sale the defendants, Hammer and Opsvig would be entirely released from all obligations on the contract and that the plaintiff would look to the assignees of the contract for its fulfilment, but, by mutual mistake, the provision releasing the defendants was omitted in the writing. The defendants Hammer and Opsvig paid $2,000 to the plaintiff at the time of entering into the contract, and thereafter wrote to Mr. Baldwin who was the agent of the plaintiff, asking the privilege of paying $2,846 on January 1, instead of $3,000, which amount would leave the balance an even $19,000. There does not appear to be any answer to this letter, but it is clear that the plaintiff received and accepted the $2,846 in lieu of the $3,000, as provided in the contract, and on the 20th of May, 1920, the land contract was sold and assigned to the defendants, A. Walker and J. A. Chamberlin, who took possession, and have since had construc-

tive possession of said land. They paid interest on the contract from time to time, and in 1924 they rented the land to Fred Baldwin, husband and agent of the plaintiff, who farmed the land in 1924 and 1925, taking all the crop, except enough to pay the thresh bill, and refused to account for the same. Defendants Walker and Chamberlin allege in their answer that they do not know how much is due on their contract, and ask that the plaintiff be required to prove the amount, the same being unknown to the defendants.

There is a counterclaim for the crops in 1924 and 1925. The following statement appears in the record on page 130, "it is agreed that Mr. Walker should have credit on the counterclaim for $390." There was considerable discussion between the parties and the attorneys in regard to the counterclaim set up in the answer of the defendants Walker and Chamberlin, and it was agreed that they be credited with an additional sum of $350 for the crops raised on the land during the year 1925. This appears to be a stipulation dictated to the stenographer during the trial and would entitle Walker to $390, and an additional sum of $350 on the counterclaim.

The court found, that there was an agreement to release Hammer and Opsvig upon the payment of the $3,000, and that in reducing said agreement to writing the agreement to release was omitted from the contract; that the $4,000 was not paid on January 1, 1925; that the crop for 1924 and 1925 had not been fully accounted for by the plaintiffs to the defendants; and further findings of fact and conclusions of law were made favorable to defendants, and from a judgment dismissing the action the plaintiff appeals and demands a trial de novo.

There are several assignments of error relating to the granting of motions for leave to file amended answer, but we are of the opinion that the court did not abuse its discretion in permitting the defendants to amend their answers. Assignment 5 specifies as error the findings of the court that there was an agreement between the plaintiff and defendants Opsvig and Hammer that upon resale of said land and assignment of the contract said defendants were to be released from liability. This involves a construction of the contract. Section 5898, Comp. Laws 1913 provides:

"The language of a contract is to govern its interpretation if the language is clear and explicit."

Section 5899, Comp. Laws 1913 provides:

"When a contract is reduced to writing the intention of the parties is to be ascertained from the writing alone if possible." Section 5901, Comp. Laws 1913 provides:

"The whole of a contract is to be taken together, so as to give effect to every part." Under § 5904, Comp. Laws 1913:

"The words of a contract are to be understood in their ordinary and popular sense."

And under § 5903, Comp. Laws 1913:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect."

As heretofore stated, this contract is drawn on the usual blank form and that portion of it relied upon by defendants Hammer and Opsvig is written in, in typewriting. There must have been some purpose in putting this clause in the contract other than simply giving the right to sell the land and assign the contract. The right to sell the land and assign the contract is a legal right, and it was not necessary to put such a provision in the contract to enable them to sell. There was a provision in the contract by terms of which the plaintiff agreed to convey this land to the defendants or their assignees, and the right to assign the contract is implied, but the right to sell the land and assign the contract would exist without such implication, unless there was a provision in the contract preventing it. It must be, then, that the parties had something else in mind when this clause was inserted in the contract other than the retention of a right which they already had. Hammer had no personal interest in the deal; he advanced the money telling Opsvig that he could have whatever was made out of it. Both were largely interested in land, and it would be only reasonable for them to want to dispose of the contract without any further liability on their part. Plaintiff had bought the land for $19,000, sold it for $23,846 and on the payment to her of $2,000, and $3,000 January 1st, she would have all the money back that she paid on the land, and an equity of nearly $5,000 clear to her. It seems reasonable that it was the intention of this provision in the contract to release Hammer and Opsvig if this option was exercised by them. At that time, May 1920, it is a matter of common knowledge that farm products were high, and according to the record this land had

increased in value in a few months after plaintiff bought it nearly $5,000. This provision was an option in the contract for the benefit of Opsvig and Hammer. They were not obliged to pay the $3,000 at the time it was paid. The contract was to pay $2,000 down and $7,000 on or before January 1, 1925, more than six years after the first payment, and on the payment of the $7,000 January 1, 1925, they would be entitled to a deed, giving a mortgage back on the land for the balance, and after these conditions were put in writing they then put in this additional provision providing for the sale of the land on the payment of $3,000 January 1st, after such sale. This option was exercised by the defendants, Opsvig and Hammer, not by payment of the full $3,000 but by payment of $2,846. They had previously written to Mr. Fred Baldwin asking him to accept that amount in lieu of the $3,000 and while the record does not show that Baldwin agreed to it, it does show that the money was paid and accepted, and we are of the opinion that this provision was written in the contract with the intention of releasing the defendants Opsvig and Hammer if the option was exercised, and that a release was a part of the agreement which was inadvertently omitted from the written contract. We are also of the opinion that plaintiff is entitled to judgment against the defendants A. Walker and A. W. Chamberlin as executor of the estate of J. A. Chamberlin for the difference between what is due on her contract and the mortgages on the said land which Walker and Chamberlin assumed and agreed to pay, the amount of the mortgages to be deducted from the amount of their contract with the plaintiff.

The defendants in their answer admit that they purchased the contract and assumed all liability; that there is due upon the said contract a certain sum of money unknown to them; that the defendants rented the land to Fred Baldwin, agent of the plaintiff, for the years 1924 and 1925, and never accounted for the crops, and demand in their prayer that the amount and value of said crops and other damages be set off as against the claims of the plaintiff. It is not clear from this record just how much is due on the plaintiff's contract or on the mortgages against the land, and the case is remanded to the trial court for the purpose of ascertaining the amount due on the land contract and the amount due on the said mortgages, either by the taking of further testimony or by stipulation of counsel, and, when so ascertained, that judg-

ment be entered for the plaintiff for the difference between the amount due on the land contract and the amount due on the mortgages. It is so ordered.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.

## On Petition for Rehearing.

BURKE, J. The plaintiff has filed a petition for a rehearing claiming:

First, that the court has misconstrued the option in the contract sought to be enforced in this action; that the provision in the option, viz., "the second party may sell within described land at any time providing a payment of $3,000 is made on or before January 1st following such sale, leaving the payment due on or before January 1st, 1925, $4,000," means the sale made by Hammer and Opsvig, and not the sale by the plaintiff to Hammer and Opsvig. According to our view, Hammer and Opsvig had the right to sell at any time after the execution of their contract with the plaintiff, provided a payment of $3,000 was made on or before January 1st, after such sale. The sale by Hammer and Opsvig to Walker and Chamberlin was made on the 20th day of May 1920, and on November 11, 1920, they wrote to Mr. Fred Baldwin, at Chester, Iowa, as follows:

"We are going to ask you a favor and trust that you will be kind enough to answer us or write Mr. Blackwell.

"In making the deal with Mr. Walker for the farm we got from you, he paid us down to $19,000 and we assigned the contract to him. This leaves a payment for him to make of $4,000 before he gets deed from you, and the contract calls for a mortgage for the balance. We are to make a payment to you of $3,000 on January 1st according to contract, and by him paying you $4,000 on or before January 1st, 1925, there would be a first mortgage to take back for you of $14,846. In order to get our deal with Mr. Walker straightened up so as to leave a first mortgage of $15,000 even, we would ask that you take $2,846 on January 1st, leaving even $19,000 against the land. This means that you are taking $154 less on January 1st and make the mortgage $154 larger, or even $15,000."

As stated in the opinion there is no answer to this letter in the record, but it is clear from the record that the plaintiff received the $2,846 on January 1, 1921, in lieu of the $3,000, in accordance with the provision of the option in the contract between the plaintiff and the defendants Hammer and Opsvig. It is clear from this letter that the payment of $2,846 was made under the option in the contract. It states they have made a deal with Mr. Walker for the farm; that they are to pay $3,000 on January 1, according to the contract. That statement can only mean in accordance with the provision in the option, for unless the option is exercised there is no payment to be made until January, 1925; this is also shown by the further statement in the letter, viz., this leaves a payment for him (meaning Mr. Walker) to make of $4,000 on or before January 1, 1925. The letter does not say it will leave so much for us to pay, but it says specifically it will leave so much for Walker to pay, and at the time this letter was written the land was more than ample security for the payment of plaintiff's contract. The language of the letter also shows the construction that Hammer and Opsvig placed upon the option in the contract, and no exceptions were taken to such construction until after January, 1925, four years later, when the bottom had dropped out of land values, and the land was no longer ample security for the payment of the contract debt.

Second. It is also the contention of the plaintiff that the stipulation between the parties at the trial, of the amount the defendants Walker and Chamberlin should be credited with on the counterclaim, is the sum of $350, instead of the sum of $390 and an additional sum of $350. The opinion quotes the stipulation as found in the record, but since the case is remanded for the purpose of determining how much is due on plaintiff's contract after deducting the amount due on prior mortgages on said land, which the defendants Walker and Chamberlin assumed and agreed to pay, the amount thereof to be deducted from the amount due on their contract with the plaintiff, the amount the defendants should be credited with on their counterclaim may also be determined at said time. It is so ordered.

The petition is denied.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.